IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BENETH CASAS-AMADOR,** § | | |
| **#49869-177,** § | | |
| MOVANT, § | | |
| § | | |
| **V.** § | CASE NO. 3:18-CV-1510-N-BK | |
| § | (CRIMINAL CASE NO. 3:15-CR-336-N-1) | |
| § | | |
| **UNITED STATES OF AMERICA,** § | | |
| RESPONDENT. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Beneth Casas-Amador's *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the United States Magistrate Judge for a recommended disposition. For the reasons outlined here, Casas-Amador's Section 2255 motion should be **DISMISSED WITH PREJUDICE** as time-barred.[1]

**I. BACKGROUND**

In 2016, Casas-Amador pled guilty to conspiring to possess methamphetamine with intent to distribute and was sentenced to 210 months' imprisonment and a three-year term of supervised release. Crim. Doc. 129. In October 2016, Casas-Amador filed a Section 2255 motion that the Court dismissed without prejudice because his direct appeal was still pending. *Casas Amador v. United States*, 3:16-cv-02933-N-BK, Civ. Doc. 4 (N.D. Tex. Dec. 16, 2016).

---

[1] *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings ("If it plainly appears from the motion and any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.").

Casas-Amador's direct appeal was dismissed on February 9, 2017, *see United States v. Casas-Amador*, 676 Fed. Appx. 332 (5th Cir. 2017) (per curiam), however, he did not file this Section 2255 motion until June 12, 2018. Doc. 2.

As it appeared his Section 2255 Motion was time barred, the Court directed Casas-Amador to file a response regarding the application of the one-year limitations period, which he has since done. Doc. 4; Doc. 5. Upon review, the Court finds that Casas-Amador has failed to demonstrate that he is entitled to equitable tolling or that his case falls within the "actually innocence" exception. Thus, he cannot overcome the limitations bar.

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year limitations period for federal inmates seeking post-conviction relief under 28 U.S.C. § 2255, which the Court may consider *sua sponte* after providing notice and an opportunity to respond. *See* 28 U.S.C. § 2255(f); *cf. Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (addressing a similar provision applicable to state habeas petitions under 28 U.S.C. § 2254). Here, Casas-Amador has not alleged any facts that could trigger a starting date under Subsections 2255(f)(2)-(4), so the limitations period began to run when his judgment of conviction became final. Section 2255(f)(1).

Casas-Amador's direct appeal was dismissed on February 9, 2017. *Casas-Amador*, 676 Fed. Appx. 332. Because he did not file a petition for writ of certiorari, his judgment of conviction became final 90 days later on May 10, 2017—when the time for filing a petition for writ of certiorari expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that a conviction becomes final when the Supreme Court "affirms a conviction on the merits on direct

review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires"). Thus, the one-year limitations period under Section 2255(f)(1) expired on May 10, 2018, and Casas-Amador's Section 2255 motion—deemed filed on May 30, 2018—is time-barred absent equitable tolling.[2]

### 1. Equitable Tolling

Casas-Amador's filings, even when liberally construed in accordance with his *pro se* status, do not present due diligence and "rare and exceptional circumstances" warranting equitable tolling. *See Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (finding that equitable tolling requires a petitioner to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing"); *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016) (reaffirming "that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control") (emphasis in original).

> Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. (T)he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect. Unfamiliarity with the legal process does not justify equitable tolling.

*United States v. Kirkham*, 367 Fed. Appx. 539, 541 (5th Cir. 2010) (internal citations and quotation marks omitted).

Casas-Amador asserts that "extraneous circumstances foreclosed [him] from submitting his pleading(s)" within the one-year period. Doc. 5 at 3. He avers that he "is a Mexican

---

[2] The Section 2255 is deemed filed on May 30, 2018, the date on which Casas Amador indicated he signed it and likely also handed it to prison officials for mailing. Doc. 2 at 8. *See* Rule 3(d) of the Rules Governing Section 2255 Proceedings (providing that the "mailbox rule" is applicable to inmates who use jail/prison's mail system).

national, is untrained in the law, has limited English language skills, and has proceeded thus far in his collateral litigation with the assistance of a fellow inmate who is English proficient." Doc. 5 at 1 n.1. Casas-Amador further asserts that he wanted to seek a "'Treaty Transfer' from the United States to Mexico," and since one of the pre-requisites was that he "not have litigation concerning his case pending in the courts," he was forced to choose between timely filing a Section 2255 motion or seeking a Treaty Transfer. Doc. 5 at 3-4.

On May 8, 2018, two days before the one-year limitations period expired, Mexico denied his request for a Treaty Transfer. Doc. 5 at 9 (denial letter attached to response). Still, Casas-Amador did not promptly mail his Section 2255, because, as he avers, he was concerned about the language in an affidavit in support of his Section 2255 motion drafted by another "jailhouse lawyer." Doc. 5 at 4-5. He asserts that because he did not see the "jailhouse lawyer" who was assisting him for several weeks, he was unable to ask about the troublesome language in the affidavit until late May 2018. Doc. 5 at 5. He further avers that on May 30, 2018, after finally speaking with the "jailhouse lawyer," he handed his Section 2255 motion (without the affidavit) to prison officials for mailing. Doc. 5 at 5; Doc. 2 at 8.

Casas-Amador fails to offer any legal support for his suggestion that his Treaty Transfer request equitably tolled the one-year statute of limitations. However, even if such tolling were appropriate, Casas-Amador's petition is still untimely by 19 days. At most, a pending Treaty Transfer petition could have tolled the limitations period until May 11—allowing three days for mail delivery after the May 8, 2018 denial. But as Casas-Amador concedes, he did not mail his Section 2255 motion until May 30, and for a wholly different reason.

Under these circumstances, the Court finds that Casas-Amador did not pursue the habeas "process with diligence and alacrity." *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Apart from going to the law library in the hopes of seeing the "jailhouse lawyer" there, Casas-Amador did nothing else. In his unsworn response, he avers simply that he "was accustomed to meeting the 'jailhouse lawyer' in the law library and hoped that he would find the 'jailhouse lawyer' in the law library so he . . . could tell him of his concerns about the language contained in the Affidavit." Doc. 5 at 13. Simply waiting for the "jailhouse lawyer" to show up at the law library for well over two weeks was not cautious and clearly not diligent, especially in light of the looming one-year deadline. While Casas-Amador "hope[d] that the date of issuance of the appellate mandate would make his 2255 Motion timely," such an extended period of virtual inactivity clearly indicates a lack of due diligence. Doc. 5 at 5 n. 3. To be sure, unexplained delays do not evince due diligence or rare and extraordinary circumstances. *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (concluding "equity is not intended for those who sleep on their rights" (quotation and quoted case omitted)).

    Furthermore, a litigant cannot wait until near a deadline to make a filing, and then seek equitable tolling when something goes wrong. *See Johnson v. Quarterman*, 483 F.3d 278, 287-88 (5th Cir. 2007) (filing on last day and encountering court computer problem that prevented filing lacked due diligence); *see also Schmitt v. Zeller*, 354 Fed. Appx. 950, 952 (5th Cir. 2009) (leaving only two months to act once state habeas proceedings concluded, having squandered most of the one-year period before filing the state application, was not diligent); *Hudson v. Quarterman*, 332 Fed. Appx. 209, 210 (5th Cir. 2009) (eleven and one-half month delay in mailing state application after conviction became final did not evince due diligence). Leaving little margin for error, as Casas-Amador did in this case when he delayed filing his Section 2255 motion in the hopes of meeting the "jailhouse lawyer" in the law library to ask him about the affidavit, was imprudent.

Moreover, contrary to Casas-Amador's assertion, the date the mandate issued does not control the finality of a conviction for purposes of the AEDPA statute of limitations. *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008) (concluding the date the original opinion issued from the court of appeals was the relevant date for limitations purposes). Neither Casas-Amador's unfamiliarity with the law nor his *pro se* status rises to the level of a rare or exceptional circumstance that would warrant equitable tolling. *Id.* at 365-66 (lack of legal training, ignorance of the law, and *pro se* status are insufficient to equitably toll the statute of limitations). A limited education and the inability to speak or read the English language are disabilities common to many incarcerated persons and, as such, they do not justify equitable tolling. *See Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) ("It is irrelevant whether the unfamiliarity [with the law] is due to illiteracy or any other reason.").

Also unavailing is Casas-Amador's conclusory assertion that his "unfamiliarity with the English language was an obstacle to understanding what he needed to do and when he needed to do it." Doc. 5 at 5. *Yang v. Archuleta*, 525 F.3d 925, 929-30 (10th Cir. 2008) (colleting cases finding lack of proficiency in the English language did not amount to extraordinary circumstances warranting equitable tolling). Without a showing that the language barrier actually prevented him from filing a timely 2255 motion, Casas-Amador's lack of English proficiency is insufficient to toll the limitations period. *See Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (holding that where the alleged lack of proficiency in English has not prevented the petitioner from accessing the courts, that lack of proficiency is insufficient to justify equitable tolling).

For these reasons, the Court concludes that Casas-Amador has not carried his burden of establishing that equitable tolling is warranted in this case. *Petty*, 530 F.3d at 365.

### 2. Actual Innocence

Despite his guilty plea, Casas-Amador also asserts a claim of actual innocence and suggests that the fundamental miscarriage of justice exception applies. Doc. 5 at 2-3; Doc. 5 at 12 (averring in an affidavit that he is "innocent of charges"). However, insofar as Petitioner relies on miscarriage of justice principles as a stand-alone exception to the one-year limitations period – independent of his actual innocence claim – his assertion fails. As confirmed in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), "the fundamental miscarriage of justice exception applies only in cases of actual innocence." *Coleman v. Greene*, 845 F.3d 73, 76–77 (3d Cir. 2017) (addressing exception in context of time barred habeas petition). *Perkins* held that "a credible showing of actual innocence" not only satisfies the fundamental miscarriage of justice exception for state procedural default issues but also justifies an equitable exception to section 2244(d)'s limitations period. 569 U.S. at 391, 397. *See also United States v. Williams*, 790 F.3d 1059, 1075-76 (10th Cir. 2015) ("Historically, the common law miscarriage of justice exception (also referred to as the actual innocence exception) allowed a petitioner to overcome certain procedural bars to postconviction relief if a petitioner could show 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'") (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).

That notwithstanding, Casas-Amador also fails to present a credible claim of actual innocence. While a claim of actual innocence may provide "a gateway through which a petitioner may pass" when the limitations period has elapsed, "tenable actual-innocence gateway pleas are rare." *Perkins*, 569 U.S. at 386. A gateway actual innocence claim is available only when a movant presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless

constitutional error." *Id.* at 401 (quotations and quoted case omitted).  To meet the threshold requirement, a petitioner must present new evidence in support of his claim and "'show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"  *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Casas-Amador presents no newly discovered evidence that would undermine this Court's confidence regarding the finding of guilt.  Instead, he only claims that: (1) he pled guilty because his lawyer misadvised him; (2) he "happened to be in the wrong place at the wrong time"; (3) there was no evidence of his involvement; and (4) the informants lied, "because [he doesn't] know anyone of them involved in this drug stuff."  Doc. 5 at 12.  This is patently insufficient.  *See Perkins*, 569 U.S. at 386 (concluding that a petitioner presents a credible claim of actual innocence by producing new evidence that is sufficient to persuade the court that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt'" (quoting *Schlup*, 513 U.S. at 329)).

Even when liberally construed, Casas-Amador's argument is not supported by new reliable evidence that was not available at the time he pled guilty.  *See Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) ("Evidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'"); *Floyd v. Vannoy*, 894 F.3d 143, 156 (5th Cir. 2018) (finding information that "was not presented at trial, and remained unknown to the prosecution, defense, and trial judge throughout the trial . . . [was] 'new' evidence").  Thus, Casas-Amador has wholly failed to satisfy the rigorous standard in *Schlup* for demonstrating actual innocence.

## III. CONCLUSION

Casas-Amador's motion to vacate sentence under 28 U.S.C. § 2255, was filed outside of the limitations period. Moreover, he has failed to establish circumstances warranting equitable tolling or to demonstrate his actual innocence. Thus, his Section 2255 motion should be **DISMISSED WITH PREJUDICE** as barred by the one-year statute of limitations.

**SO RECOMMENDED**, January 29, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).